UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| MARK TAYLOR, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil No. 20-12312-LTS |
| LIBERTY LIFE ASSURANCE COMPANY OF BOSTON N/K/A LINCOLN LIFE ASSURANCE COMPANY OF BOSTON, | ) ) ) ) ) | |
| Defendant. | ) ) | |

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGEMENT (DOC. NOS. 25, 26)

August 4, 2022

SOROKIN, J.

Plaintiff Mark Taylor brings this action against Defendant Liberty Life Assurance Company of Boston n/k/a Lincoln Life Assurance Company of Boston ("Lincoln") pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B). Taylor seeks reinstatement of his long-term disability ("LTD") benefits. The parties have cross moved for summary judgment. Doc. Nos. 25, 26.[1] For the reasons that follow, the Motions for Summary Judgment by both parties are DENIED and the case is REMANDED to Lincoln for further proceedings consistent with this Order.

---

[1] Citations to "Doc. No. __ at __" reference items appearing on the court's electronic docketing system, and pincites are to the page numbers in the ECF header.

I.      PROCEDURAL HISTORY

Taylor worked as a cardiothoracic surgical physician's assistant at Southcoast Hospitals, Group, Inc. Plaintiff's Statement of Facts, Doc. No. 35 ("PSOF") ¶ 1. After experiencing persistent pain in his left foot[2] and associated mobility issues, Taylor was diagnosed with small fiber neuropathy. Administrative Record ("AR") 641. His symptoms became so severe that Taylor left his position on November 24, 2017 and submitted a claim for short-term disability ("STD") benefits pursuant to Southcoast Hospital's group disability income policy issued by Lincoln ("the Group Policy"). PSOF ¶ 20; Defendant's Statement of Facts, Doc. No. 35 ("DSOF") ¶ 22. Lincoln initially denied Taylor's application for STD, AR 1511, but later reversed its determination after Taylor provided additional evidence, AR 1131. On October 30, 2018, Lincoln formally approved Taylor for STD benefits through February 25, 2018. AR 1131.

Taylor then filed a claim for LTD benefits. Under the terms of the Group Policy, an employee who demonstrates that he is unable to perform the "material and substantial"[3] duties of his "own occupation" can receive 24 months of LTD benefits. AR 64. After the 24-month "own occupation" term elapses, the employee is eligible for continued LTD benefits only if he proves that his disability disqualifies him from "any occupation." Id. The Group Policy defines "any occupation" as "any occupation that the Covered Person is or becomes reasonably fitted by education, experience, age, physical and mental capacity." AR 63.

---

[2] Taylor's comorbid diagnoses include chronic headaches, chronic left foot pain, lumbar degenerative disc/joint disease, obesity, and myofascial pain in the neck, shoulders, and upper back. AR 641.

[3] Under the Group Policy, "'material and substantial Duties', with respect to Long Term Disability, means responsibilities that are normally required to perform the Covered Person's Own Occupation, or any other occupation, and cannot be reasonably eliminated or modified." AR 67.

2

On October 29, 2018, Lincoln denied Taylor's claim for LTD benefits during the "own occupation period," explaining that Taylor was capable of performing the work of a physician's assistant with a different employer. AR 1137. Taylor appealed the denial and submitted additional medical documentation for Lincoln's consideration. AR 1048. Lincoln thereafter reversed its initial denial and awarded Taylor LTD benefits despite receiving conflicting advice from its consulting physician. AR 931-33, 949.

After the expiration of the "own occupation" period, Taylor applied for continued LTD benefits under the "any occupation" provision of the Group Policy. Lincoln determined that Taylor failed to satisfy his burden to prove that he was unable to perform the duties of any occupation and denied his claim by a letter dated January 1, 2020. AR 640-46. Taylor once again filed an appeal, citing additional medical documentation in support of his claim. AR 552-66. Lincoln denied Taylor's appeal on October 12, 2020, AR 158-70, which brings us to his present lawsuit challenging Lincoln's determination that Taylor is ineligible for LTD benefits during the any occupation period.

II.  LEGAL STANDARD

The parties dispute what standard of review applies in this case. Generally speaking, the standard of review in an ERISA case differs from review in an ordinary civil case, where summary judgment serves as a procedural device to screen out cases that present no trial-worthy issues. See Leahy v. Raytheon Co., 315 F.3d 11, 17 (1st Cir. 2002); Orndorf v. Paul Revere Life Ins. Co., 404 F.3d 510, 517 (1st Cir. 2005); Bard v. Boston Shipping Ass'n, 471 F.3d 229, 235 (1st Cir. 2006); cf. Fed. R. Civ. P. 56. Because the focus of the court's review in an ERISA case is the final administrative decision, "the district court sits more as an appellate tribunal than as a trial court." Leahy, 315 F.3d at 18. "In the ERISA context, summary judgment is merely the

3

vehicle for deciding the case; the factual determination of eligibility for benefits is decided solely on the administrative record, and the non-moving party is not entitled to the usual inferences in its favor." Bard, 471 F.3d at 235 (citation and internal quotation marks omitted).

In ERISA cases, an inquiring court must examine the plan documents to determine the standard of judicial review applicable to an ERISA plan's denial of benefits. See Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). A challenge to a denial of benefits must be reviewed de novo "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Id. Where the plan document grants the plan full discretionary authority, the decision is instead reviewed for abuse of discretion. See id. at 111; Colby v. Union Sec. Ins. Co. & Mgmt. Co. for Merrimack Anesthesia Assocs. LTD Plan, 705 F.3d 58, 61 (1st Cir. 2013). The parties dispute whether the Court ought to review Lincoln's decision under the de novo or abuse of discretion standard.

Here, the plain terms of the plan provide Liberty discretionary authority to determine benefit eligibility, stating: "Liberty shall possess the authority, in its sole discretion, to construe the terms of this policy and to determine benefit eligibility hereunder. Liberty's decisions regarding construction of the terms of this policy and benefit eligibility shall be conclusive and binding." AR 107. Taylor does not challenge this conclusion. Rather, he contends that Lincoln is not Liberty. But the record before the Court demonstrates, without contradiction, that: (1) Lincoln National Life Insurance Company purchased Liberty Life Assurance Company of Boston in 2018; (2) Liberty Life Assurance Company of Boston changed its name to Lincoln Life Assurance Company of Boston in 2019; and (3) after the present appeal was decided, Lincoln Life Assurance Company of Boston merged into the Lincoln National Life Insurance Company. Doc. No. 31-1 ¶¶ 2-4. Thus, at the time Lincoln Life Assurance Company of Boston

4

denied Taylor's appeal in October of 2020, it was the same entity it once was simply acting under a new name and leadership. In other words, Lincoln Life Assurance Company of Boston and Liberty Life Assurance Company of Boston were, at that time, different names for the same entity.

Deferential reviews applies even if Lincoln and Liberty were distinct entities at the time of the decision in question because "[w]hen [Lincoln National Life Insurance Company] . . . acquired all of the assets and liabilities of [Liberty], it stepped into [Liberty's] shoes, and in so doing acquired all of the powers conferred by the Plan on [Liberty], including the discretionary authority to make benefits decisions." Giannone v. Metro. Life Insurance Co., 311 F. Supp. 2d 168, 175 (D. Mass. 2004). Deferential review therefore applies under any view of the record.[4]

Under the deferential abuse of discretion standard, the court is tasked with determining whether the plan administrator's decision "is plausible in light of the record as a whole." Leahy, 315 F.3d at 17. The claimant bears the burden to prove that he is disabled under the terms of the policy. Maher v. Mass. Gen. Hosp. Long Term Disability Plan, 665 F.3d 289, 293 (1st Cir. 2011). Though the standard of review is certainly favorable to the plan administrator, "there is a sharp distinction between deferential review and no review at all." Colby, 705 F.3d at 62. "In order to withstand scrutiny, the plan administrator's determinations must be 'reasoned and

---

[4] Taylor relies on Rodriguez-Abreu v. Chase Manhattan Bank in support of his contention that Liberty's failure to properly delegate its discretion to Lincoln renders the de novo standard of review applicable. 986 F.2d 580 (1st Cir. 1993). Rodriguez-Abreu held that de novo review applied when plan fiduciaries, who were granted discretionary authority by the plan, failed to delegate that discretionary authority to the plan administrator tasked with determining plan eligibility. Id. at 583-84. The present case, however, does "not implicate an improper delegation by the fiduciary. Rather, . . . when [Lincoln] purchased [Liberty], any discretionary authority [Liberty] negotiated in its policies transferred to [Lincoln]. Williams v. Hartford Life & Acc. Ins. Co., 2009 WL 3127761, at *8 (S.D. Ohio Sept. 25, 2009) (citing Simoma v. Hartford Ins. Co., 606 F.Supp.2d 1091, 1096 (C.D. Cal. 2009)).

supported by substantial evidence.'"  Id. (quoting D & H Therapy Assocs., LLC v. Bos. Mut. Life Ins. Co., 640 F.3d 27, 35 (1st Cir.2011)).

III.   DISCUSSION

ERISA mandates that plan administrators denying disability claims "set[] forth the specific reasons for such denial, written in a manner calculated to be understood by the participant."  29 U.S.C. § 1133(1); see also Ministeri v. Reliance Standard Life Ins. Co., No. 21-1651, 2022 WL 2914068, at *8 (1st Cir. July 25, 2022) (quoting 29 U.S.C. § 1133) ("ERISA and its implementing regulations clearly mandate that any denial of benefits claimed must be accompanied by a written notice "setting forth the specific reasons for such denial.").  "This encompasses a requirement that [Lincoln] explain why it chose to discredit relevant evidence" and provide a non-conclusory explanation of its findings.  Cowern v. Prudential Ins. Co. of Am., 130 F. Supp. 3d 443, 467 (D. Mass. 2015) (citing Love v. Nat'l City Corp. Welfare Benefits Plan, 574 F.3d 392, 396 (7th Cir.2009)).  In other words, "[t]he denial letter need not detail every bit of information in the record[, but] it must have enough information to render the decision to deny benefits susceptible to judicial review."  Orndorf, 404 F.3d at 526.  With these parameters in mind, the Court turns to its analysis of the determination letters denying Taylor's claim for any occupation LTD benefits.

Lincoln denied Taylor's appeal of the January 1 decision by a final determination letter dated October 12, 2020 ("Final Determination Letter").  The Final Determination Letter conceded that "[Taylor] may have continued to experience some symptoms associated with his condition beyond February 25, 2020."  AR 168.  It ultimately determined, however, that "the information [i.e., the record] does not contain exam findings, diagnostic test results or other forms of medical documentation supporting his symptoms and impairments remained of such

severity, frequency and duration that they resulted in restrictions or limitations rendering him unable to perform the duties of the occupations identified as being within his functional capacity and vocational skills after that date." Id.  The Final Determination Letter referenced the first letter from January 1, 2020 ("Initial Determination Letter"), explaining that the Initial Determination Letter detailed the basis for Taylor's initial claim denial.  AR 158.  For this reason, the Court considers the reasoning articulated in the Initial Determination Letter as well as the Final Determination Letter.

In the Initial Determination Letter, Lincoln concluded: "[t]he medical review includes agreement by both Dr. Driscoll and Dr. Cheng that Mr. Taylor is not completely disabled, and further agreement to his supported restrictions and limitations in that he cannot stand for prolonged periods or lift heavy objects.  Based on this, along with a vocational review identifying alternate occupations within those supported restrictions, we have determined that Mr. Taylor can perform, with reasonable continuity, material and substantial duties of the [identified] occupations."  AR 645.

The Court starts its review with the Final Determination Letter.[5]  The evidence in the record does not support Lincoln's sweeping conclusion that there are no "exam findings, diagnostic test results or other forms of medical documentation supporting his symptoms and impairments remained of such severity, frequency and duration that they resulted in restrictions or limitations rendering him unable to perform the duties of the occupations identified as being within his functional capacity and vocational skills after that date."  AR 168.  In fact, there are "exam findings, diagnostic test results[, and] other forms of medical documentation" supporting

---

[5] The Court does not address the portions of either the Final Determination Letter or Initial Determination Letter addressing Taylor's claim for "buy-up" coverage, which is not the subject of the present lawsuit.

7

the conclusion that Taylor's symptoms and impairments are severe enough to result in restrictions rendering him unable perform any occupation. Specifically, the record reveals that Taylor submitted what can fairly be described as "medical documentation" from three primary sources[6]: an occupational therapist, a neuropsychologist, and Taylor's primary care physician. At least one of those sources (Bekken) also provided diagnostic test results.[7] As explained below, each of these sources conducted at least one in-person visit with Taylor and concluded that his disability prevented him from full-time employment, i.e., that he was disabled from any occupation. Though one could certainly take issue with Taylor's evidence, Lincoln's statement that the information provided is devoid of any "exam findings, diagnostic test results, or other forms of medical documentation" showing that Taylor is completely disabled is an inaccurate description of the record.

First, there are the letters from Dr. Driscoll, Taylor's long-time primary care physician.[8] Driscoll's first letter referenced a "personal assessment" from May of 2020 in which Taylor reported persistent foot pain and related sleeplessness, fatigue, and concentration issues. See generally AR 568-81. A doctor's report or findings based on multiple examinations of and a long-term relationship with the patient is "medical documentation." Based on his "longitudinal medical relationship" with Taylor, i.e., his examinations and treatment of Taylor over an extended period of time, Driscoll confirmed Taylor's self-reported symptoms and concluded that "[Taylor's] physical restrictions and limitations, and cognitive limitations (caused by lack of

---

[6] In addition, Taylor submitted various medical records as well as affidavits from him and his wife testifying to his ongoing pain and inability to work. See AR 159-60.
[7] Karen Bekken holds a doctorate degree is psychology. AR 595. She conducted neuropsychological testing of Taylor, which yielded results that formed the basis of her conclusions. AR 585. Bekken's testing constitutes a diagnostic test.
[8] Dr. Driscoll reported that Taylor has been his patient for about 30 years. AR 582.

restful sleep and foot pain), [render] Mark Taylor . . . unable to work in his prior occupation as a Cardiac Surgical Physician Assistant [or] to work in a less competitive occupation on a full-time basis, or part-time basis." AR 582. This letter is, plainly, medical documentation supporting the conclusion that Taylor suffers from symptoms and impairments of such frequency and severity as to render him unable to work in any occupation.

Second, Taylor submitted a functional capacity evaluation ("FCE") conducted by occupational therapist Kerry Raymond intended to determine Taylor's physical ability to continue work as a physician's assistant.[9] AR 1050-70. Raymond determined that Taylor's small fiber neuropathy prevented his return to full-time work of any kind, adding that "Mr. Taylor's mental and physical fatigue limits his ability to perform high levels of cognitive function and decision making, potentially compromising his patients' well being." AR 1054.

Finally, Taylor underwent a neuropsychological evaluation by psychologist Dr. Bekken.[10] AR 583-94. Bekken conducted an interview, battery of tests, and review of the available records to assess Taylor's mental and cognitive capacities. AR 585. Bekken found evidence of neurocognitive impairment "due to ongoing pain disorder" and "resulting emotional impairment (depression, anxiety)." AR 589-90. She explained:

> [s]ignificant variability is present in Mr. Taylor's cognitive profile as a whole, with scores ranging from the 98th to below the 1st percentiles for his age, i.e., at times as well or better than 98 of 100 people his age and at times worse than 99 of 100 people in his age (Very Superior to deficient ranges); this is an extreme amount of variability. Given a premorbid potential calculated as falling in the Superior or better ranges for his age, this is evidence of significant cognitive impairment. In fact, only about 15% of subtest scores fell within the IQ expectation (i.e., in the High Average or above ranges). Over 35% of the subtest scores fell in the Low Average range or below, evidence of **significant cognitive impairment**.

---

[9] Lincoln's Initial Determination Letter addresses the FCE, but discredits its findings based on Taylor's reported ability to do household chores and assist his wife with childcare. AR 642.
[10] Like the letter from Dr. Driscoll, Dr. Bekken's report was submitted by Taylor after the initial denial of his claim for any occupation LTD benefits.

9

AR 590 (emphasis in original).

The medical documentation makes clear that Taylor's claimed inability to return to work arises from two sources: (1) his physical limitations caused by small fiber neuropathy and (2) his cognitive impairment.  The Court looks first at the cognitive element of Taylor's claim, putting to one side Taylor's physical limitations.  As Bekken explained, she did not find Taylor cognitively impaired in the manner, for example, of someone with an organic brain injury.  Instead, Bekken determined that the variability in Taylor's test results indicated to her, based on her medical training, that Taylor's pain and depression impairs his cognition to such an extent as to prevent his return to work full-time.  See Bekken Report, AR 590 ("Thus, in addition to physical limitations documented by his treating physicians, cognitive and emotional sequalae are present at such a level as to prohibit a return to work.").  From a purely cognitive perspective, a clear theme emerges from the medical documentation—mental impairment arising from Taylor's chronic foot pain and medications, according to these evaluations, impacts his ability to work in any occupation.  Put differently, distracting physical pain and related depression, these evaluators said, preclude Taylor from work that requires sustained concentration.  Taylor corroborated these conclusions with the undisputed fact that the Social Security Administration awarded him disability benefits, though the basis or explanation for that award is not contained in the record thus limiting the significance of that fact.  See AR 534.

In short, Taylor submitted "exam findings," "diagnostic test results" and "other medical documentation" that support his claim that he suffers from cognitive restrictions that disqualify him from work in "any occupation."  The Final Determination Letter's assertion that Taylor submitted no such evidence is, simply put, inaccurate, directly contradicted by the administrative record, and not supported by substantial evidence.  In the Final Determination Letter, Lincoln

qualified its finding regarding the dearth of medical documentation of Taylor's claimed disability.  Rather than asserting that there was no information to support Taylor's claimed disability full stop, Lincoln stated that there was no information "supporting his symptoms and impairments remained of such severity, frequency and duration that they resulted in restrictions or limitations rendering him unable to perform the duties of the occupations identified as being within his functional capacity and vocational skills after that date."  AR 168.  But, without more explanation (and there is no more in the Final Determination Letter), this qualification adds little in the way of context or explanation for Lincoln's determination that Taylor failed to meet his burden because there is such evidence, as the Court has described.  Reasonably read, and Lincoln's determinations must be reasonable, Colby, 705 F.3d at 62, Driscoll, Bekken, and Raymond, each from their varying vantage points, concluded that Taylor suffers from pain, depression, or medication side effects that have such a disruptive effect on his cognition as to render him unable to perform "any occupation."

To reject Taylor's claim for the reason expressed in the Final Determination Letter (i.e., that he failed to submit any medical evidence to support the frequency or degree of his symptoms causing his claimed disability) is an abuse of discretion because (1) Taylor did submit such evidence and (2) the Letter does not adequately explain its determination that Taylor is not cognitively impaired.  The Final Determination Letter offered no other express reasoning for its cognitive determination beyond the conclusory assertion that Taylor did not meet his burden of proof, but that unadorned sentence cannot save the decision.  Though the Final Determination Letter contains an "Appeal Evaluation" section, it provides no further illumination.  It consists of a series of long block quotations from Lincoln's referring medical professionals.  See generally 158-70.  The selection of the quotations, some of which span more than a page, do not explain

the "specific reasons" for Lincoln's denial of the claim from a cognitive perspective or otherwise render the reasoning behind the decision susceptible to judicial review.

The underlying evaluations block quoted by the Final Determination Letter are of no illuminating assistance. Presumably, Lincoln determined that Taylor was not cognitively disabled from any occupation by relying entirely on a report from Dr. Mosbach, a referring psychologist hired by a third-party vendor tasked by Lincoln with conducting independent reviews of LTD claims. See DSOF ¶¶ 159-60. At least a full page of the final determination letter is dedicated to extended quotations taken directly from Mosbach's report. See AR 162-63, 166. These quotations are accompanied by no independent analysis or explanation by Lincoln itself.

Turning to Mosbach's conclusions, he determined that "there is no evidence of any impairing psychiatric or cognitive diagnoses" during the relevant time period. AR 162. Mosbach relied heavily on a note from Taylor's most recent visit to his attending neurologist, Dr. Cheng, who provided treatment for Taylor's chronic headaches and neuropathy. Though the purpose of the visit is unclear, the note indicated, inter alia, that Taylor's "short and long-term memory, and cognition were good." AR 162, 455. Mosbach's report went on to summarize the findings of Bekken's evaluation. Noting Taylor's high IQ and results on other tests, Mosbach determined that Taylor's "general intellectual functioning was not impaired" and therefore did not support any restrictions or limitations. AR 162-63; see also Mosbach Report, AR 280 ("I disagree with [Dr. Bekken's assessment] as an individual with an IQ in the high average range, and a processing speed in the low average range, and no significant impairment in memory or executive function would [not] be incapacitated from 'any occupation.'").

The portions of Mosbach's report upon which the Final Determination Letter relied summarily rejected Bekken's findings due to Taylor's general intellectual capacity. According to Bekken, however, Taylor's performance on several tests deviated substantially from his "IQ expectation." AR 590. It is this deviation, and not Taylor's overall intellectual capacity, that is the focus of Bekken's findings. Yet, Mosbach's report (and, by extension, the Final Determination Letter) focused on individual test scores and failed to engage at all with Bekken's determination that the <u>variability</u> in test scores suggested a distracting level of pain that prevented Taylor from harnessing his intellectual abilities in a productive manner. Moreover, Bekken's cognitive findings are not isolated. Both Driscoll and Raymond determined that Taylor's inability to concentrate precludes him from full-time work. <u>See</u> <u>supra</u> at 8-9. It is also worth noting that the shortcomings of Mosbach's report shed doubt on the validity of Lincoln's vocational assessment, which relied on Mosbach's conclusion that Taylor had no cognitive restrictions or limitations to determine which jobs he could perform. <u>See</u> AR 162, 167-68. For these reasons, Lincoln's Final Determination Letter failed to genuinely engage with Taylor's cognitive ability to return to work. Both Mosbach and Lincoln rejected Taylor's claim by, first, concluding that there was "no evidence" of impaired cognition when that was simply not so, and, second by failing to meaningfully grapple with the evidence submitted. Neither the block quotations from Mosbach's report, the report itself, nor the Final Determination Letter assist in explaining the reasoning behind the denial of Taylor's claim for benefits and, in particular, in addressing a core element of the claim for benefits. In light of the previously mentioned shortcomings of Mosbach's report, Lincoln's wholesale and unexplained adoption of Mosbach's

findings and rejection of Bekken's report constitutes an abuse of discretion in this case.[11] See Prohkorova v. Unum Life Ins. Co. of Am., No. CV 17-30064-MGM, 2020 WL 3713022, at *10 (D. Mass. Feb. 6, 2020). One might infer that Lincoln discredited Bekken's findings in light of Taylor's visit with Dr. Cheng, but "adopting invalidity by implication" without addressing the core conflict is also an abuse of discretion. Petrone v. Long Term Disability Income Plan for Choices Eligible Emps. Of Johnson & Johnson & Affiliated Companies, 935 F. Supp. 2d 278, 294 (D. Mass. 2013).

The Final Determination Letter does reference the Initial Determination Letter. Thus, the Court turns to consider the statements in that letter as well. The Initial Determination Letter rested in large measure on the purported "agreement" of Doctors Driscoll and Cheng that Taylor was disabled only from his occupation as a physician's assistant rather than from any occupation. AR 641. Further evidence submitted by Taylor after the Initial Determination Letter contradicts this assessment and thus reference to a conclusion based on an earlier version of the record is not sufficient on its own to support the denial. Accordingly, the Court finds Lincoln's denial of Taylor's claim for benefits an abuse of discretion even under the deferential standard of review because it has failed to adequately explain its determination that Taylor is not cognitively impaired.

---

[11] The explanations for its decision that Lincoln now offers in its summary judgment papers come too late. Lincoln may not "hold [the] basis [for its opinion] in reserve rather than communicate it to the beneficiary, thereby thwarting a full and meaningful dialogue regarding the denial of benefits." Ministeri, 2022 WL 2914068, at *8 (citation and internal quotation marks omitted). Taylor made this argument in his reply to Lincoln's opposition to his Motion for Summary Judgment. Doc. No. 40 at 1. In response, Lincoln contended that Taylor waived this argument by not raising it in his initial Motion. Doc. No. 43 at 1-2. Lincoln's waiver argument fails because Taylor could not have predicted the content of Lincoln's opposition in advance.

Nonetheless, the Court declines to award benefits to Taylor. Nothing in the foregoing reasoning or analysis is intended to suggest that Lincoln is obligated to credit any of Taylor's evidence. To the contrary, "a plan administrator is not obligated to accept or even to give particular weight to the opinion of a claimant's treating physician." Morales-Alejandro v. Med. Card Sys., Inc., 486 F.3d 693, 700 (1st Cir. 2007). Moreover, "the existence of contradictory evidence does not, in itself, make the administrator's decision arbitrary." Petrone, 935 F. Supp. 2d 278 at 298. Lincoln may not, however, "simply ignore . . . medical conclusions or dismiss those conclusions without explanation." Love, 574 F.3d at 398; see also Petrone, 935 F. Supp. 2d at 298 (D. Mass. 2013) ("[T]he administrator cannot simply ignore contrary evidence, or engage with only that evidence which supports his conclusion.").

Though Lincoln abused its discretion by disregarding evidence of Taylor's cognitive incapacity, the "evidence is not so overwhelming as to compel summary judgment in favor of [Taylor]." Petrone, 935 F. Supp. 2d at 296. Indeed, there are several flaws in Taylor's presentation. For one, Dr. Driscoll provided inconsistent assessments of Taylor's ability to return to work and Dr. Cheng stated that Taylor could return to work in an occupation that allows him to shift his physical position throughout the day.[12] See AR 161. And, unlike Lincoln's reviewers, both Driscoll and Bekken failed to specifically delineate what Taylor can and cannot do. Of course, Bekken found that Taylor demonstrated numerous cognitive strengths in her testing. Nothing in the Court's decision obligates Lincoln to accept Bekken's determination that the variability she found in a person with high and average scores on other tests precludes Taylor from "any occupation" or the identified occupations. These and other reasons may ultimately

---

[12] Moreover, Taylor himself previously acknowledged that his foot pain was "bothersome but not debilitating" at an appointment in March of 2019. AR 258.

sink Taylor's claim for LTD benefits.  However, while it need not address every piece of evidence or explain every potential contrary piece of evidence, Lincoln cannot simply say "no."  The "clear deficiencies in the integrity of [Lincoln's] decision-making process" render summary judgment in its favor inappropriate at this time.  <u>Cowern</u>, 130 F. Supp. 3d at 468.  Thus, the Court REMANDS the case to Lincoln for further proceedings consistent with this opinion.  In light of this conclusion, the Court need not now address any other issues or the parties' additional arguments.

IV.   <u>CONCLUSION</u>

Accordingly, both the Plaintiff and Defendant's Motions for Summary Judgment, Doc. Nos. 25, 26, are DENIED.  The case is REMANDED to Lincoln for review consistent with this Order.

SO ORDERED.

  /s/ Leo T. Sorokin  
Leo T. Sorokin  
United States District Judge